**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

No. 98-10116

---

HELEN ROSE OMOILE AKANNI,
on behalf of NELLIE ROSE AKANNI,

Plaintiff-Appellee-Cross-Appellant,

v.

JOHN DOES 1-100,

Defendants,

DALLAS COUNTY, TEXAS,

Defendant-Appellant-Cross-Appellee,

---

Appeal from the United States District Court
for the Northern District of Texas
(3:93-cv-1506-r)

---

April 12, 1999

Before HIGGINBOTHAM, JONES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

## I.    INTRODUCTION

Helen Rose Omoile Akanni filed the present action against Dallas County, Texas in Texas state court, alleging violations of 42 U.S.C. § 1983 and the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §§ 101.001–.109.  Following removal, the district court dismissed Akanni's cause of action under § 1983 but retained pendent jurisdiction over her claims under the Texas Tort Claims

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Act.  A jury returned a $7,500 verdict in Akanni's favor.  Dallas County appeals this verdict and the trial court's revision of the verdict to award pre-judgment interest.  Akanni cross-appeals the dismissal of her § 1983 claim.  We hold that Akanni had no claim cognizable under state or federal law.  We affirm in part and reverse in part.

Akanni and the City of Dallas Police Department have had a turbulent relationship.  The question in this case, however, is whether the indifference and mismanagement of her situation by the Dallas police also extended to the County.

On May 15, 1991, while searching for her daughter, Akanni was involved in an automobile accident.  Distraught over the fact that her daughter was missing[1] **and shaken by the accident, Akanni, who suffers from schizophrenia, began to keen[2] and cry out for her lost child.  Responding to the accident, City of Dallas police officers observed Akanni's odd behavior and arrested her for D.W.I. The arresting officers failed to conduct a field sobriety test or administer a breathalyser at the scene.  During the arrest, the officers informed Akanni that she could file a missing persons report on her child from the police station.**

---

[1]Akanni's daughter had fallen asleep under a bed at Akanni's apartment and had not responded to her mother's calls.

[2]Akanni, a native Nigerian, describes keening as "a cultural response to highly emotional and/or traumatic incidents whereby the Nigerian woman positions herself in a kneeling fashion, raises her arms to and from the ground as if worshiping, and wails loudly and continuously."

Akanni was transported to the Lew Sterrett Jail, a facility operated by the Dallas County Sheriff. She was not video-taped at her arrest and booking despite City of Dallas procedures prescribing the actions for persons charged with offenses involving alleged intoxication. During the book-in, Akanni had to be physically restrained by officers, signed the booking information sheet as "The Lord," and was subjected to a strip search by a male officer. She was also not permitted to file a missing persons report. At the request of City of Dallas officers, a County nurse drew a sample of Akanni's blood during the book-in. The sample was immediately returned to the City of Dallas for custodial purposes; however, the City did not deliver the sample to the Dallas County forensics laboratories for testing until May 17.

Following her May 15 book-in, Akanni was placed in a behavioral observation cell. Once there, Akanni continued to exhibit strange behavior. In an effort to control her, jail officials consulted with Dallas County psychiatrist Dr. Michael Pittman by telephone and, on his advice, administered a combination of sedatives to Akanni by injection. The treatment, a combination of Haldol and Cogentin that Akanni had been prescribed previously, was administered twice on May 16 and once again on May 18. Dr. Pittman spoke personally with Akanni on May 21, learned of her history of schizophrenia, and recommended a course of regular medication. Akanni refused the treatment. On May 22, Akanni's

3

brother posted bond, and Akanni was released.[3]  The analysis of Akanni's blood was not completed by the County and reported to the City of Dallas until May 28, 1991 -- 11 days after the sample had been delivered to the County.  The tests were negative for alcohol and controlled substances.

Over the next several months, Akanni was periodically admitted to Terrell State Hospital and Parkland Hospital for treatment of her psychiatric disorder.  On December 29, 1991, Akanni was arrested for disorderly conduct.  Once again, she was brought to the Dallas County jail.  After consulting with Dr. Pittman, County officials administered Haldol and Cogentin for her behavioral problems.  Although a psychiatric examination was scheduled for December 31, Akanni was released prior to the appointment.  The release occurred at 2:30 a.m. on the 31st. Unaware of her surroundings and disoriented following her release, Akanni wandered aimlessly for several miles before orienting herself.

Following these incidents, Akanni filed the present action in state court against the City of Dallas and Dallas County. The defendants removed the action to federal court.  Prior to trial, the City of Dallas settled Akanni's claims.  The district court dismissed the § 1983 claim against Dallas County for alleged failure to provide appropriate medical care to Akanni during her

_____

[3]Over the seven days of her incarceration, Akanni's two-year old daughter had been alone in Akanni's apartment.  Advised of the daughter's "abandonment," the City of Dallas dispatched officers to Akanni's home and, once again, arrested Akanni -- this time for Abandonment of a Child.

4

**incarcerations at the county jail, but Akanni's claims under the Texas Tort Claims Act were allowed to proceed to trial. Following a jury verdict in Akanni's favor, Dallas County timely appealed.**

**III. ANALYSIS**

A.    *Deprivation of Medical Care*

The district court properly dismissed Akanni's § 1983 claims against Dallas County.  Under the Fourteenth Amendment, pre-trial detainees must be provided adequate medical care during incarceration.  See Hare v. City of Corinth, 135 F.3d 320, 324 (5th Cir. 1998) (quoting Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)).  A denial of medical care rises to the level of a constitutional claim, however, only if there is deliberate indifference of the authorities.  Akanni argues that during neither of her incarcerations was she seen by a doctor or provided any medical care to allay her mental distress, and, in the early morning hours of December 31, 1991, she was released without regard to her known psychiatric condition.

The summary judgment record clearly indicates that Dallas County employees did not deprive Akanni of medical care and, in fact, sought on several occasions to calm Akanni in order to protect her and County employees from harm.  During both incarcerations, Akanni was placed in a behavioral observation cell. When necessary, County officials consulted a psychiatrist who prescribed medication to sedate Akanni.  During her first visit, Akanni also met personally with Dr. Pittman but refused his offer of further treatment for her condition.  Moreover, Akanni's

5

December 31 release from jail prior to a scheduled appointment with Dr. Pittman did not violate her rights as a pretrial detainee under the Constitution. Accordingly, without our even reaching the question of imputing liability against the County, the district court properly dismissed Akanni's claims under § 1983.

*B. Texas Tort Claims Act*

A governmental unit, such as Dallas County, is entitled to sovereign immunity unless waived. See University of Texas Med. Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994); Tex. Civ. Prac. & Rem. Code § 101.001(3)(B) (defining county as governmental unit for purposes of Texas Tort Claims Act). Under the Texas Tort Claims Act, Dallas County may be held liable for personal injury caused by its use of tangible personal property. See Tex. Civ. Prac. & Rem. Code § 101.021(2). Only Dallas County's use of tangible personal property can create liability -- non-use is insufficient. See Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 584-85 (Tex. 1996). Moreover, the County must have used "tangible personal property" to cause the injury. Information is not tangible personal property. See York, 871 S.W.2d at 178-79.

The district court characterized Akanni's claims against the County as misuse of a blood sample. We disagree. Akanni did not allege that the blood was improperly analyzed, stored, or processed. The County neither mishandled nor improperly processed the blood, and the results were correctly and accurately reported. As such, Akanni's reliance on Salcedo v. El Paso Hosp. Dist., 659 S.W.2d 30 (Tex. 1983), is misplaced. In Salcedo, a case severely

6

limited by the march of Texas law,[4] **the El Paso Hospital District was denied immunity based on a hospital physician's misdiagnosis of a heart attack.** See 659 S.W.2d at 33. The court found the physician had misused an electrocardiogram by failing to properly interpret the graph produced by the machine. See id.

Conversely, Akanni's claim against the County is premised on the County's failure to supply the results of her blood test to City of Dallas officials in a timely manner -- i.e., failing to supply information about the test results. To that extent, Akanni's case is indistinguishable from York, a case in which the Texas Supreme Court found that a failure to timely diagnose a hip injury due to the mishandling of medical records did not fall within the Texas Tort Claims Act waiver of immunity. See York, 871 S.W.2d at 178-79; see also Thornhill v. Ronnie's I-45 Truck Stop, Inc., 944 S.W.2d 780, 784-86 (Tex. App. -- Beaumont 1997, writ dism'd by agr.) (State Fire Marshal immune from liability based on failure to timely act on internal recommendations).

IV. CONCLUSION

The trial court properly dismissed Akanni's claims under § 1983. However, the court improperly denied Dallas County

---

[4]See Dallas County Mental Health and Mental Retardation v. Bossley, 968 S.W.2d 339, 342-43 (Tex. 1998) (explaining limits to holding in Salcedo). Other cases relied upon by the plaintiff, such as City of Houston v. Arney, 680 S.W.2d 867 (Tex. App. -- Houston [1st Dist.] 1984, no writ) and Texas Dep't of Corrections v. Winters, 765 S.W.2d 531 (Tex. App. -- Beaumont 1989, writ denied), have also been overruled or criticized. See York, 871 S.W.2d at 179 (rejecting Arney); Sawyer v. Texas Dep't of Criminal Justice, 983 S.W.2d 310, 312 (Tex. App. -- Houston [1st Dist.] 1999, no writ) (criticizing Winters).

7

immunity from suit under Texas law. Processing Akanni's blood sample in a more timely fashion would not have hastened her release -- only reporting the test results to the City of Dallas could have effected her liberation. This failure to supply information does not fall within the Texas Tort Claims Act's limited waiver of sovereign immunity. It is unnecessary to reach the other issues raised by the parties. Accordingly, we reverse the judgment for Akanni and affirm the dismissal of claims against the County under § 1983.

**AFFIRMED IN PART; REVERSED IN PART.**